IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

DR. JOSEPH A. CHASE & KATRINA
CHASE, INDIVIDUALLY AND AS
PASTORS OF FRIENDSHIP TEMPLE,

    Plaintiffs,

        v.                                Civil Action No. 2:05cv446

CITY OF PORTSMOUTH,

    Defendant.

## ORDER AND OPINION

Plaintiffs Dr. Joseph A. Chase, Jr. and Katrina Chase, in their individual capacity and as pastors of the Friendship Temple, filed this suit against the City of Portsmouth alleging violations of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First Amendment's Free Exercise Clause, and both the substantive due process and equal protection components of the Fourteenth Amendment.  These claims arose when the Portsmouth City Council ("City Council") rejected plaintiffs' application for a Use Permit to operate a church at property located in Portsmouth, Virginia.  Defendant City of Portsmouth filed a motion requesting the Court to abstain from hearing this matter, and motions to dismiss each of the plaintiffs' counts.  The plaintiff filed a motion in limine to limit the introduction of evidence supporting the City Council's decision to that stated during the Council's public hearings.

1

For the reasons stated below, the Court **DENIES** defendant's motion to abstain and **DENIES** defendant's motions to dismiss the RLUIPA claims. The Court **GRANTS** the defendant's motion to dismiss the First Amendment claim, without prejudice to the substantive claims therein, and the substantive due process claim. The Court further **GRANTS** the defendant's motion to dismiss the equal protection clause claim, but gives leave to the plaintiffs to amend their complaint. Finally, the Court **DENIES** the plaintiffs' motion in limine.

I.  **FACTS AND PROCEDURAL BACKGROUND**[1]

    A.  **Factual Background.**

Plaintiffs Dr. Joseph A. Chase, Jr. and Katrina Chase are pastors of the Friendship Temple and the Friendship Cathedral in Suffolk, Virginia. Plaintiffs are the owners of real property and improvements located at 812 Washington Street in the City of Portsmouth. The property consists of approximately three-quarters of an acre of land upon which sits a two-story stone building with a tall steeple in a primarily residential neighborhood. The building was built in 1899 and was used continuously as a house of worship until 1998. According to the Portsmouth Zoning Ordinances and Schedules, the property has a zoning designation of D-1 Public. In this zoning district, the City Council must approve a Use Permit application to operate a church.

On or about May 28, 2004, plaintiffs submitted a Use Permit application to operate a church on the property to the City of Portsmouth Planning Commission. Attached to this

---

[1] In ruling on a motion to dismiss, the court must accept the plaintiff's allegations as true. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). Therefore, the following summary is taken from allegations contained in the plaintiffs' Amended Complaint, which, for the purposes of these motions, are taken as true.

application were plans for "substantial renovations" to the building and surrounding grounds and a contractor's written proposal for such renovations. On December 7, 2004, the Planning Commission recommended approval of the plaintiffs' application.

On May 24, 2005, the City Council held a public hearing and plaintiffs' Use Permit application appeared on the agenda for a first reading. By voice vote, the Council approved the application 4-2. Plaintiffs allege that the Council Members who voted against the plan failed to give reasons for their vote other than to "cite a two-acre land requirement." Complaint ¶ 20.[2]

On June 14, 2005, the City Council held a second public hearing and the plaintiffs' Use Permit application was on the agenda for a second and final reading. At this vote, the Council denied the application 4-3. Plaintiffs state that, again, no reasons were given for the denial other than some Council Members "cited a two-acre land requirement." The Council Members also cited that seven other churches' applications for use permits were declined because of a similar "two-acre" requirement. ¶ 23.[3]

From these facts, plaintiffs brought suit against the City of Portsmouth and each of the members of the City Council. They alleged a violation of the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). 42 U.S.C. § 2000cc, *et seq.* Second, they

---

[2]The first hearing vote tally was as follows: (permit granted: 4-2, by voice vote)
    <u>For the Permit</u>:    Marlene W. Randall, Stephen E. Heretick, Esq., Elizabeth M. Psimas, William E. Moody, Jr.
    <u>Against the Permit</u>:    Dr. James W. Holley, III, Charles B. Whitehurst.

[3]The final hearing vote tally was as follows: (permit denied: 4-3, by electronic vote)
    <u>Against the Permit</u>:    Dr. James W. Holley, III, William E. Moody, Jr., Charles B. Whitehurst, Ray A. Smith.
    <u>For the Permit</u>:    Marlene W. Randall, Stephen E. Heretick, Esq., Elizabeth M. Psimas.

alleged a violation of the Free Exercise Clause of the First Amendment. Third, they alleged, through 42 U.S.C. Section 1983, a violation of the First Amendment and the RLUIPA. Fourth and finally, they alleged a violation of the equal protection and substantive due process components of the Fourteenth Amendment. For these claims they seek an order of mandamus or mandatory injunction compelling defendants to approve the Use Permit as well as damages. They also seek to recover their attorney's fees and costs incurred in enforcing the RLUIPA pursuant to 42 U.S.C. Section 1988(b).

  B.  **Procedural Posture and Background.**

In a hearing on October 17, 2005, the parties agreed, in open court, to the dismissal of the Council Members in their individual capacities, leaving only the City of Portsmouth as a defendant. At this hearing, the Court ordered the defendant to submit an answer to the plaintiffs' Amended Complaint and all preliminary motions by October 31, 2005. The defendant timely filed its motions to dismiss and for abstention and requested a hearing on each matter. The plaintiffs timely filed their motion in limine and also requested a hearing.

## II. ABSTENTION

The defendant requests the Court to abstain from hearing this case. By urging the federal court to abstain from hearing a genuine and independent federal statutory claim and no less than three constitutional claims, the defendant certainly presents a novel and unusual request for the federal court to abstain from enforcing an alleged violation of a federal statute.

In support of its request, defendant relies heavily on construing this case as merely a local land use dispute. Typically called <u>Burford</u> abstention, this doctrine applies where a state provides a uniform, expeditious, and adequate method of case determination and federal court

intervention in such matters would disrupt important state public policy considerations. Burford v. Sun Oil Co., 319 U.S. 315, 318 (1943).[4] Not all matters that involve local policy, however, require abstention. For example, when a claim is brought alleging that federal law preempts state regulatory action, federal adjudication will not disrupt the state's uniform interests in such matter. See New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 362 (1989).

Abstention is highly inappropriate in this case. The defendant claims that state and local land use issues predominate and federal statutory and constitutional issues are secondary. Indeed, the Fourth Circuit has held that "absent unusual circumstances, a district court should abstain under the Burford doctrine from exercising its jurisdiction in cases arising solely out of state or local zoning or land use law, despite attempts to disguise the issues as federal claims." Pomponio v. Fauquier County Bd. of Supervisors, 21 F.3d 1319, 1327 (4th Cir. 1994). The court continued, however, stating that those cases which have deviated from this broad policy of abstention have "reflected the presence of a genuine and independent federal claim, includ[ing] a valid claim of religious prejudice . . . , and a claim of federal statutory preemption as well as First Amendment rights." Id. (citing Marks v. City of Chesapeake, 883 F.2d 308 (4th Cir. 1989); Neufeld v. City of Baltimore, 964 F.2d 347 (4th Cir. 1992)).

The plaintiffs' claims fit squarely within this framework. First, they allege a violations of both of the RLUIPA's substantive provisions. 42 U.S.C. § 2000cc(a), (b). The first provision of the statute states:

---

[4] The defendant also pleads Pullman abstention, but this doctrine applies where there are unsettled questions of state law. See R.R. Comm'n v. Pullman Co., 312 U.S. 496, (1941). Neither party nor the Court can find any unsettled questions of state law relative to this case. Therefore, the Court will not address the Pullman doctrine further.

> "No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly or institution–
>     (A) is in furtherance of a compelling governmental interest; and
>     (B) is the least restrictive means of furthering that compelling government interest."

42 U.S.C. § 2000cc(a). The second provision states that:

> "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution."

While the RLUIPA is a relatively new statute, the *only* federal court that has seen fit to abstain from hearing a RLUIPA claim has done so for reasons not applicable to the case at bar. In Lighthouse Cmty. Church of God v. City of Southfield, the court abstained pursuant to the Younger abstention doctrine. 382 F. Supp. 2d 937, 940 (E.D. Mich. 2005). According to the Supreme Court in Younger v. Harris, a federal court should abstain from a matter in deference to ongoing state proceedings. See 401 U.S. 37, 91 (1971). There are no ongoing state proceedings in this case.

While it appears that only one federal court has abstained from hearing a local land use regulation-based RLUIPA claim, many other federal courts have seen fit to hear such cases. See, e.g., Midrash Shepardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1219 (11th Cir. 2004) (zoning ordinances); Konikov v. Orange County, 410 F.3d 1317, 1319 (11th Cir. 2005) (zoning ordinaces); Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin, 396 F.3d 895, 897 (7th Cir. 2005) (re-zoning application); Westchester Day Sch. v. Village of Mamaroneck, 386 F.3d 183, 185 (2d Cir. 2004) (construction permit).

Aside from the RLUIPA claim, the plaintiffs also bring suit under the Free Exercise

Clause, U.S. Const. amend. I, the Fourteenth Amendment's Due Process and Equal Protection components, U.S. Const. amend. XIV, and Section 1983, 42 U.S.C. § 1983. There are no allegations constituting claims under state statutory law. This Court finds that the assertion of a valid claim under the RLUIPA makes abstention inappropriate in this case. This particular statute was enacted with the following statement:

> "The right to build, buy or rent [physical] space is an indispensable adjunct of the core First Amendment right to assemble for religious purposes. . . . Churches in general, and new, small, or unfamiliar churches in particular, are frequently discriminated against on the face of zoning codes and also in the highly individualized and discretionary processes of land use regulation. Zoning codes frequently exclude churches in places where they permit theaters, meeting halls, and other places where large groups of people assemble for secular purposes. Or the codes permit churches only with individualized permission from the zoning board, and zoning boards use that authority in discriminatory ways."

Joint Statement of Sens. Kennedy & Hatch, 146 Cong. Rec. S7774-01. What the defendant's desire, to place this matter back in the local government, is to ignore the very basis and reasoning which Congress set forth for the statute.

In light of the overarching federal statutory interests in this matter, defendant's motion to abstain is **DENIED**.

## III.  MOTIONS TO DISMISS

### A.  Legal Standard for Rule 12(b)(6) Motions

The defendant's motions to dismiss each of the plaintiff's claims rest on Federal Rule of Civil Procedure 12(b)(6). This Rule permits federal courts to dismiss an action for "failure to state a claim upon which relief can be granted." "At this stage of the litigation, we must accept [the plaintiff's] allegations as true. A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the

allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); accord Slade v. Hampton Rds. Reg'l Jail, 407 F.3d 243, 248 (4th Cir. 2005).

Because the purpose of a Rule 12(b)(6) motion is to test the legal, but not the factual sufficiency of a complaint, a court's consideration is limited to the pleadings alone, drawing all reasonable inferences in favor of the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). The defendant's motions will be addressed in the order in which they were presented in its brief.

### B. RLUIPA

The defendant moved that the plaintiffs' claim under the RLUIPA should be dismissed for three reasons. First, it alleged that the plaintiffs failed to plead a substantial burden as required by the statute. Second, it alleged that the plaintiffs are not a "religious institution or assembly" as required by the "Equal Terms" provision of the RLUIPA. See § 2000cc(b). Finally, they assert that the plaintiffs failed to plead an ownership or other property interest in the regulated land at the time of the City Council's adverse action.

As a threshold matter, the plaintiffs raised a claim under RLUIPA directly and through Section 1983. Consistent with Section 1983 jurisprudence, the Court finds that the plaintiffs cannot use Section 1983 as a vehicle for a RLUIPA claim because the statute provides for "appropriate relief" against the government. § 2000cc-2(a). A plaintiff may not use Section 1983 where the underlying statute has its own comprehensive enforcement scheme. See City of Rancho Palos Verdes v. Abrams, 125 S.Ct. 1453, 1459 (2005). Appropriate relief may include injunctive and declaratory relief as well as nominal damages. See Guru Nanak Sikh Soc. of Yuba City v. County of Sutter, 326 F. Supp. 2d 1140, 1162 (E.D. Cal. 2003). In passing the

RLUIPA, Congress also provided that attorney's fees and costs may be awarded to the plaintiff under 42 U.S.C. Section 1988 in the event that their RLUIPA claim is successful. The Court's ability to craft "appropriate relief" and the provision of attorney's fees through Section 1988 create a sufficiently comprehensive remedial scheme to obviate the need for an action under Section 1983. Therefore, the plaintiffs' Section 1983 claim asserting RLUIPA is **DISMISSED** as redundant and without prejudice to the substantive claim under the RLUIPA.

### 1. **Substantial Burden**

The defendant alleges that the plaintiffs failed to plead that defendant's actions imposed a substantial burden on their religious exercise. The RLUIPA prohibits the imposition of any land use regulation that imposes a "substantial burden" on religious exercise unless the regulation is the least restrictive means of advancing a compelling government interest. § 2000cc(a). In order to trigger this "strict scrutiny" analysis, the plaintiffs must first meet their burden of showing that their inability to use the regulated land for religious purposes constituted a substantial burden on their religious exercise.

The plaintiffs allege that the City Council created a substantial burden on their religious exercise, that is, their use, building, or conversion of real property for religious exercise by denying their Use Permit application. Without the Use Permit, they cannot assemble for religious purposes in the building or on the land they own—they cannot operate a church. See Portsmouth Mun. Ord. § 40-43. The plaintiffs also allege other burdens, which in and of themselves may not be substantial, but can amount to a substantial burden when taken in combination with the Use Permit denial. Specifically, the plaintiffs allege that monetary loss from purchasing the property and their inability to bring their religious message to the downtown

Portsmouth community also constituted burdens. What the evidence will show is unknown at this time, but the plaintiffs ought to have opportunity to fully develop it.

As the Fourth Circuit has not yet had an opportunity to define the contours of the substantial burden test under the RLUIPA, this Court will look to tests elucidated by other circuits courts as guidance, however, it is unnecessary to define exact contours of a substantial burden at this stage of the litigation. Given the plaintiffs allegations that their inability to use the regulated property for religious exercise is a substantial burden as well as plaintiff's desire to educate by bringing a religious message to downtown Portmouth, and looking at the Complaint in the light most favorable to them, the defendant's motion to dismiss for failure to plead a substantial burden must be **DENIED**.

### 2. "Religious Institution or Assembly" Requirement

The defendant asserts that the plaintiffs do not qualify as a "religious institution or assembly" as required by the "Discrimination and Exclusion" provisions of the RLUIPA. See § 2000cc(b). Under this provision, the plaintiffs alleged that they were treated on less than equal terms with secular institutions and assemblies. The defendant asserts that the second provision of the statute, which applies only to a "religious institution or assembly," was purposefully modified from the first provision, which applies to "a person, including a religious assembly or institution." As such, defendant contends, the plaintiffs cannot use the second provision as a vehicle to advance their claim when suing in their individual capacity and as pastors.

Under Virginia constitutional and statutory law, churches are not allowed to hold property. See Va. Const., art. IV, § 14. "Generally speaking, a church is a group of people gathered to worship a deity. Such a church body cannot be controlled by a legal entity created by

the state." Bates v. Cekada, 130 F.R.D. 52 (E.D. Va. 1990). Church property in Virginia is controlled by trustees who are appointed by the state courts, or by ecclesiastical officers if permitted by the rules of their church. Va. Code Ann. § 57-16. Specifically, these officers are allowed, by statute, to "hold, improve, mortgage, sell and convey" church property in accordance with the laws of their religious assembly and the Commonwealth of Virginia. See id.

As pastors of their congregation, plaintiffs have the power to manage their land as permitted by the rules of the Friendship Temple. Ancillary to this power must be the ability to apply for a Use Permit and to enforce rights related to the property in courts of law. Defendants admit in their brief to accepting plaintiffs application for a Use Permit to operate a church. Now, however, they contend that the same persons who were treated as an assembly of worshipers for zoning and application purposes are suddenly not an assembly for the purpose of this statute.

The RLUIPA states that "[t]his Act shall be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this Act and the Constitution." § 2000cc-3(g). Pursuant to this directive, the plaintiffs' status as pastors of their church, and Virginia constitutional and statutory law regarding the management of church property, defendant's motion to dismiss the claim alleging a violation of the RLUIPA "Discrimination and Exclusion" provision is **DENIED**.

### 3. Failure to Plead an Ownership Interest

Defendant's final attempt to dismiss the RLUIPA claim alleges that the plaintiffs failed to plead a sufficient ownership interest in the property at the time of the City Council's adverse action on their application. The defendant contends that the plaintiffs only alleged that they recorded a deed for the land on July 16, 2005. This was about one month after the City Council

11

denied their Use Permit application.

The plaintiffs applied for a Use Permit on or about May 28, 2004. That permit was denied on June 14, 2005. In response to the defendant's motion, the plaintiffs alleged that they contracted for the land in question in an agreement dated April 15, 2004 and closed on the property on May 26, 2005, just two days after the City Council approved the application, which had already been approved by the Planning Commission. While they did not plead these facts specifically in their Amended Complaint, it is implicit in the contentions therein. For example, plaintiffs state that they "have purchased . . . [the property] located at 812 Washington Street in the City of Portsmouth, VA and [] have spent considerable time and money to obtain a use permit to use the property as their church." Amend. Compl. ¶ 2. Did the City Council lull the plaintiffs into actually closing the transaction and then reverse their position? Is this a substantial burden?

"[U]nder a court's analysis of a Rule 12(b)(6) motion, all reasonable inferences must be made in favor of the non-moving party . . . ." In re Cable & Wireless, PLC, 332 F. Supp. 2d 896, 901 (E.D. Va. 2004). The Court finds that it can reasonably be inferred from the above statement and allegations of ownership that the plaintiffs had a sufficient property interest in the regulated land to bring a claim under RLUIPA not only when their application was turned down, but when they applied as they had a contractual property interest. Therefore, the defendant's final motion to dismiss on the RLUIPA claim must be **DENIED**.

    C.    **Free Exercise Clause Violation**

The defendant alleges that Free Exercise Clause claim must be dismissed because of the plaintiffs' failure to plead a substantial burden on their religious exercise. Specifically, they

allege that the plaintiffs have not demonstrated that the City's regulation has burdened their religious exercise—the first element of a Free Exercise Clause claim. Plaintiffs alleged a violation of the Free Exercise Clause directly and through 42 U.S.C. Section 1983.

### 1. Substantial Burdens under RLUIPA and the Free Exercise Clause

Before analyzing the requirement of a substantial burden under the Free Exercise Clause, it is necessary to point out that while the substantial burden required under the RLUIPA and that required under the Free Exercise Clause are related, there are important differences relating to their distinct definitions of "religious exercise." See CLUB, 342 F.3d 752, 760 (7th Cir. 2003). In contrast to the substantial burden required under RLUIPA, a substantial burden under the Free Exercise Clause is confined to the practices and beliefs of a religion, not associated land use. See Grace United Methodist Church, 2005 WL 2746701. Therefore, it is necessary to acknowledge that, while the definitions are highly related, the Religious *Land Use* and Institutionalized Persons Act is appropriately focused on land use, while the Free Exercise Clause is focused on beliefs and practice. Compare § 2000cc-5(g) (emphasis added) (including the use, building or conversion of real property for religious purposes within the definition of religious exercise) with Employment Div., Dept. of Human Res. of Ore. v. Smith, 494 U.S. 872, 877 (1990) (focusing on the actual beliefs and practices of a particular religion and government sponsored endorsement or prohibition of those beliefs or practices). Because the Free Exercise Clause cases have thoroughly developed the burdens required to state a claim for relief, the Court will address the sufficiency of the plaintiffs' allegation that the City violated their right to freely exercise their religion.

### 2. Analysis under the Free Exercise Clause

The First Amendment is applicable to the states through its incorporation into the Fourteenth Amendment. See Cantwell v. Connecticut, 310 U.S. 296, 310 (1940). Generally, the Free Exercise Clause "forbids an official purpose to disapprove of a particular religion or of religion in general." Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 532 (1993). First and foremost, the free exercise of religion includes the right to believe and profess whatever religion one desires. Employment Div., 494 U.S. at 877. The exercise of religion, for First Amendment purposes, may also extend to the performance or abstention from certain acts. See id. (citing the assembly for worship services, participating in sacramental use of bread and wine, and abstaining from certain foods or modes of transportation as examples). The inability to use a particular parcel of land, where such location has no relation to the practice of the religion, however, does not constitute a violation of the Free Exercise Clause. See, e.g., Jimmy Swaggert Ministries v. Bd. of Equalization, 493 U.S. 378, 384-85 (1990).

The plaintiffs allege that they are substantially burdened because they are not able to use the regulated property and they have spent large amounts of money on the regulated property. The City has not, however, excluded them from practicing their religion in the city. In fact, they are expressly permitted to operate a church in other zoning districts without needing to secure a Use Permit. See Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood, 699 F.2d 303, 306-07 (6th Cir. 1983) (holding that being unable to worship in a particular location that bears no relation to the practice of the religion is not a substantial burden under the Free Exercise Clause). Moreover, they do not allege that they are being coerced into acting contrary to their religious tenets in any way.

Aside from being unable to use the regulated property for worship services, the plaintiffs' also claim that they suffered economic injury. "It is well established that there is no substantial burden placed on an individual's free exercise of religion where a law or policy merely 'operates so as to make the practice of [the individual's] religious beliefs more expensive.'" Braunfeld v. Brown, 366 U.S. 599, 605 (1961) (plurality opinion); see also Goodall by Goodall v. Stafford County Sch. Bd., 60 F.3d 168, 171 (4th Cir. 1995). Whether or not plaintiffs have suffered such economic injury, this will not satisfy the substantial burden required of a Free Exercise Clause claim.

The plaintiffs have not alleged that the City coerced or pressured them to abandon their religious beliefs or adopt other beliefs. They have not alleged that the land in question has any connection to the practice of their religion other than its use as a meeting place to educate and influence their members in their religion. They have made no other allegation other than their inability to use the regulated land and economic loss. As such, the defendant's motions to dismiss the plaintiffs Free Exercise Clause claim and Section 1983 claim alleging the same violation is hereby **GRANTED** without prejudice to the claims under the RLUIPA.

D.  **Fourteenth Amendment Claims - Due Process and Equal Protection**

Plaintiffs asserted claims under both the due process and equal protection components of the Fourteenth Amendment. Defendant moved to dismiss both counts.

1.  **Due Process**

The defendant moved to dismiss the claim that the denial of the Use Permit application violated the plaintiffs' substantive due process rights. If a plaintiff has a protected property interest in land, a local regulator's decision to deny an application, such as that for a Use Permit,

15

can run afoul of due process if it the decision is arbitrary and capricious. See <u>RRI Realty Corp. v. Inc. Village of Southampton</u>, 870 F.2d 911, 918 (2d Cir. 1989). Before deciding whether an local regulator's decision was arbitrary or capricious, it is first necessary to determine if the plaintiff had a protected property interest. A plaintiff must show a "legitimate claim of entitlement" to a benefit in order to establish a constitutionally protected property interest. See <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972). The Fourth Circuit stated in <u>Gardner v. City of Baltimore Mayor & City Council</u>, that "[w]hether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks all discretion to deny the issuance of the permit or withhold its approval." 969 F.2d 63, 68 (4th Cir. 1992).

The City of Portsmouth had discretion in determining whether to grant a Use Permit to the plaintiffs to use the regulated property as a church. See Portsmouth Municipal Ord. 70-16. Because of this discretion, the plaintiffs did not possess a constitutionally protected legitimate claim of entitlement. It should also be noted that the plaintiffs, in open court, agreed with the defendant's argument and did not oppose dismissal of this claim. The defendant's motion to dismiss the substantive due process claim is **GRANTED** without prejudice to any substantive rights flowing from their claim under the RLUIPA.

### 2. Equal Protection Clause

The defendant moved to dismiss the plaintiffs' Equal Protection Clause claim. The plaintiffs brought suit directly under the Constitution and not under Section 1983. The Supreme Court has largely ruled out the existence of any implied cause of action under the Constitution, especially when there exists an alternative civil remedy for the party through Section 1983. See

Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388 (1971); Davis v. Passman, 442 U.S. 228 (1979). Prior to 1979, there would not have been an alternative civil remedy because in 1961 the Supreme Court held that municipalities were not subject to suit under Section 1983. Monroe v. Pape, 365 U.S. 167 (1961). That case was overruled in 1979 by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1979). In Monell, the Court held that municipalities could be sued where the action alleged to violate the Constitution was implemented through official policy or custom. Id. Before Monell, the lower courts were largely divided between whether one could sustain an implied cause of action against municipalities. After Monell, most courts, including the Fourth Circuit, held that the availability of Section 1983 precludes an implied cause of action against municipalities. "[T]hat no action of the type exemplified by [Bivens] should be so implied from the Fourteenth Amendment rests upon our opinion as to the meaning of the amendment in the light of its wording, background, congressional action, and court decisions construing it." Cale v. City of Covington, 586 F.2d 311, 313 (4th Cir. 1979). See also Ocean Acres Ltd. Partnership v. Dare County Bd. Of Health, 514 F. Supp. 1117, 1123 (E.D.N.C. 1981) ("inferring a right to recover damages against defendants here is not supported by Bivens or Davis because Monell renders Section 1983 an adequate remedial vehicle for actions against local governments.").

Given this precedent, a plaintiff must use Section 1983 as a vehicle to enforce causes of action implied directly from the Constitution. Bringing an Equal Protection Clause challenge outside the auspices of Section 1983, as the plaintiffs did here, is improper. As such, the Court **GRANTS** the defendant's motion to dismiss the Equal Protection Clause claim, but gives the plaintiffs leave to **AMEND** their complaint within eleven (11) days in order to bring a proper

claim under Section 1983. The eleven days shall be measured from the November 10, 2005 hearing on this motion.

**IV.     MOTION IN LIMINE**

The final motion under consideration is plaintiffs' motion in limine to limit evidence of the reasons for the City Council vote to those reasons stated in the City Council record. As noted earlier, the original complaint listed each Council Member in their "official capacity." The parties agreed, in open court, to dismiss these defendants.

The plaintiffs argue that, because of the doctrine of legislative immunity, the Council Members cannot be compelled to testify as to the considerations they took into account when they voted on the plaintiffs Use Permit application. In Virginia, when a city council reserves to itself the right to issue a Use Permit, any action on such a permit is a legislative act. Bollinger v. Bd. of Supervisors, 217 Va. 185, 186 (1976). In performing a legislative act, the Council Members are not only immune from civil liability, see Burtnick v. McLean, 76 F.3d 611 (4th Cir. 1996), but also enjoys the right not to be compelled to testify as to their motives for voting, see id.

Legislative immunity, however, is personal. Each Council Member may decide for him or herself whether to assert their immunity or waive it. See id. at 613. At this point it is premature to limit any evidence. No Council Member has invoked their legislative immunity as of yet. If a Council Member decides to invoke his or her immunity, subjecting the plaintiffs to unfair surprise or prejudice, the plaintiffs may then make an appropriate motion to address the problem. Until then, however, the plaintiffs may seek discovery as they would in the ordinary course. Plaintiffs' motion in limine to limit evidence of the reasons for denying the Use Permit

to those in the City Council's record is hereby **DENIED**.

V.  **CONCLUSION**

This case presents two topics that are never supposed to be discussed at the dinner table—religion and politics.  As Thanksgiving approaches, both parties have appropriately set the table with a veritable cornucopia of side dishes ranging from the various abstention doctrines, to legislative immunity, to a buffet of constitutional claims.  Congress, however, has provided the turkey for this dinner.  In passing the RLUIPA, Congress sought to address the many problems new, minority, or small religious assemblies face when confronting a complex web of local regulations and ordinances, formal and informal practices, and local alliances.  In looking to delve directly into the main course, the Court hereby **DISMISSES** all of the plaintiffs' constitutional claims except those brought under the RLUIPA and without prejudice to any claims under RLUIPA or any amendments under Section 1983.

If they so desire, the plaintiffs are granted leave to **AMEND** their complaint to bring an Equal Protection Clause claim under Section 1983 within eleven (11) days of the November 10, 2005 hearing.  Finally, the plaintiffs' motion in limine is **DENIED**.

The Clerk of the Court is **DIRECTED** to provide a copy of this Opinion and Order to all parties of record.

**IT IS SO ORDERED.**

                                                            /s/
                                                    Robert G. Doumar
                                                    UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 16, 2005