IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

**DR. JOSEPH A. CHASE, JR., et al,**

        **Plaintiffs,**

v.　　　　　　　　　　　　　　　　　　　　　　Civ. No. 2:05cv446

**CITY OF PORTSMOUTH et al.,**

        **Defendants.**

### OPINION AND ORDER

Presently before the Court is plaintiffs' Motion to Compel with Regard to the Letter of June 9, 2005 and Related Subject Matter. This motion was filed on January 26, 2006 and this Court conducted a hearing on the matter on February 9, 2006. At the hearing, the Court reserved ruling on the motion and allowed the plaintiffs to conduct discovery as to the confidential nature and handling of the letter. After conducting such discovery, the plaintiffs filed a Supplemental Memorandum in Support of Plaintiffs' Motion to Compel Production of June 9, 2005 Letter on April 10, 2006. This motion is now ripe for decision. For the reasons stated below, the Court finds that the Letter of June 9, 2005 from the City Attorney to the City Council et al. is not privileged and so cannot be shielded from discovery on that basis. The Court does find, however, that the letter is protected as attorney work product under Federal Rule of Procedure 26(b)(3).

**I.      FACTS AND PROCEDURAL BACKGROUND**[1]

On January 26, 2006, the plaintiffs filed a motion to compel a letter written by the

---

[1] A complete factual summary of the case can be found at, <u>Chase v. City of Portsmouth</u>, 2005 WL 3079065 (E.D. Va. 2005).

Portsmouth City Attorney, Timothy Oksman, to the City Council Members, the Deputy City Attorney, the City Manager, and the Director of Planning. The letter addressed the legal ramifications of an upcoming vote on whether to grant a Use Permit allowing the operation of a church on property owned by the plaintiffs. After the motion was fully briefed, this Court held a hearing to determine whether the letter was subject to the attorney-client privilege on February 9, 2006.

At this hearing, the plaintiffs brought concerns about the confidentiality and handling of the letter in question. The Court gave the plaintiffs leave to conduct further discovery into the confidentiality and handling of the letter and to "submit such information as they feel is pertinent concerning the alleged confidentiality." Order of Feb. 9, 2006. The Court reserved ruling on the applicability of the attorney-client privilege until the plaintiffs filed such information. On April 10, 2006, the plaintiffs filed a Supplemental Memorandum in support of their original motion. On April 17, 2006 the defendants responded to the Supplemental. As such, this issue is ripe for review.

## II. Attorney-Client Privilege

"The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Upjohn v. United States, 449 U.S. 383, 389 (1981). Because its application interferes with "the truth seeking mission of the legal process," United States v. Tedder, 801 F.2d 1437, 1441 (4th Cir.1986), the privilege must be narrowly construed and recognized "only to the very limited extent that . . . excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth." Trammel v. United States, 445 U.S. 40, 50 (1980); see also Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998).

### A. General Requirements of Privilege

The Fourth Circuit has adopted the "classic" test for determining whether privilege applies. See Hawkins, 148 F.3d at 383. The attorney-client privilege only shields information from discovery if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his subordinate and in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing primarily either an opinion on law, legal services or assistance in some legal proceeding, and not for the purpose of committing a crime or tort; and (4) the privilege has been claimed and not waived by the client. Id. The burden is on the proponent of the privilege to establish its applicability. In re Grand Jury Subpoena, 415 F.3d 333, 338-39 (4th Cir. 2005); United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982).

It has long been held that an entity can assert the attorney-client privilege. United States v. Louisville & Nashville R. Co., 236 U.S. 318, 336 (1915) (cited in Upjohn Co. v. United States, 449 U.S. 383, 390 (1981)). As an entity, a municipal organization may invoke the privilege. Res. (3d) of Law Governing Lawyers §74 (2000). It is more difficult, however, to determine how an entity, or who in an entity, may assert the privilege and who may waive it. "The identity of that responsible person or body is a question of local governmental law." Res. (3d) Law Governing Lawyers § 74. The Portsmouth Charter and Municipal Ordinances do not address the attorney-client privilege, however, the appointment and removal of the City Attorney is made at the pleasure of the City Council. See Portsmouth Charter Art. 7, § 02; Portsmouth Municipal Code 2-101. Therefore, the City Council is the City Attorney's client and only the City Council can assert or waive privilege.

### B. Protecting the Privilege

The privilege may be waived if a disclosing party does not take reasonable steps to insure and maintain the confidentiality of the information. See In re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir. 1984). "It is not too much to insist that if a client wishes to preserve the privilege under such circumstances, he must take some affirmative action to preserve confidentiality . . . . Taking or failing to take precautions may be considered as bearing on intent." FDIC v. Marine Midland Realty Credit Corp., 138 F.R.D. 479, 482 (E.D. Va. 1991) (quoting In re: Grand Jury Proceedings, 727 F.2d at 1356). In looking for guidance as to what types of inadvertent disclosure may lead to waiver, many courts have relied on the factors described in Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y.1985). The Court in Lois stated that "[t]he elements which go into that determination include the reasonableness of the precautions to prevent inadvertent disclosure, the time taken to rectify the error, the scope of the discovery and the extent of the disclosure." Id.

## III. ANALYSIS

The plaintiffs rest their arguments against the assertion of privilege on three grounds. First, they allege that the letter does not satisfy the general requirements of privilege. Second, they allege that the letter was not adequately protected so as to protect privilege. Third, they argue that the privilege was waived by the Council, either advertently or inadvertently. The failure to protect the privilege and the alleged waiver in this case are substantially related and so will be analyzed together.

### A. The Letter Does Satisfy the General Requirements of Privilege.

The plaintiffs challenge the classification of this letter as a privileged communication because the communication did not relate to a fact of which the attorney was informed by his

client without the presence of strangers.  See Hawkins, 148 F.3d at 379.  The plaintiffs argue that the City Attorney was not approached in private about the legality of voting against the use permit.  (Oksman Depo. at 9.)  Moreover, the plaintiffs argue that simply because the City Attorney indicated that a certain vote may be illegal does not mean that the letter was based on any communication made in private or on any confidential information.  The minutes of the City Council meeting of June 14, 2005 state that "the attorney's letter of June 9th does NOT prove a denial of the application would be in violation of any law but rather is vague and does not lend support to a practice the City Council has relied upon by respected and responsible leadership of appointed members of the Planning Commission over a number of year."  (Pl's Mot. to Compel, Ex. D.)  Finally, plaintiffs argue that the letter was an unsolicited opinion sent by the City Attorney after he became aware of concerns over the legality of a particular vote and so does not meet the standards of the "classic" test.

      The defendants counter the plaintiffs' assertion that the City Attorney acted on his own outside the request of the Council by producing an affidavit from the City Attorney stating that he was, in fact, approached by several of the City Council Members regarding the plaintiffs' Use Permit Application and the legal ramifications of their vote.  (Oksman Aff. ¶ 4.)  This is a classic example of a confidential communication.  A client, here a Council Member, approached his or her attorney, the City Attorney, for legal advice relating to an existing legal problem.  Certainly some public information was involved in the City Attorney's analysis: the governing laws, the details of the permit, and other information.  But these public facts are intermixed with confidential information: the Council Members' own opinions and concerns and the City Attorney's opinions and analysis.  Given confidential treatment and the absence of any waiver, this information may be protected under the attorney-client privilege.

**B.     The Letter Was Not Adequately Protected.**

**1.     "Reasonable Protections"**

Plaintiffs next argue that the letter, even if it was privileged, was not adequately protected to preserve confidentiality.  They assert that the letter was treated no differently than any other communication between the City Attorney and the City Council.  The letter itself was marked with a statement to the effect of "Confidential" or "Attorney-Client Privilege."  (Oksman Depo. at 15-16.)  It was delivered by a legal secretary in plain envelopes that were not sealed with tape or glue, but rather only with a clasp.  (Stublen Depo. at 12-13.)  The envelopes were not marked confidential or privileged information.  (Id. at 25.)  There would be no way to know from the outside of the envelope what was inside, nor whether the contents were privileged and confidential.  (Oksman Depo. at 21, 23; Stublen Depo. at 25.)

The envelopes were delivered to a person in the city clerk's office for delivery to the councillors.  (Stublen Depo. at 23-24)  The legal secretary could not recall who she delivered the envelopes to in the clerk's office.  (Id.)  Moreover, Council Member Randall testified that the City Attorney always faxes items to her.  (Randall Depo. at 13.)  She testified that the fax machine is in her home and is accessible by both her husband and her daughter.  (Id. at 18.)  The legal secretary, however, denies having faxed this letter to Randall.  (Stublen Depo. at 35-36.)

The letter was delivered to the Council Members, the City Manager, the City Attorney's Senior Deputy, and to the Director of Planning.  (Oksman Depo. at 5.)  The City Manager and the Director of Planning are not members of the City Council and had no part in the vote on the Use Permit.  (Id. 18-19.)

The letter to the Director of Planning was delivered to his office by hand and placed in a mail slot where he received telephone messages and other documents.  (Stublen Depo. at 26.)

The box was situated on top of a counter. (Id.) The letter to the City Manager was either delivered directly to his secretary or it was delivered to his receptionist, the legal secretary could not recall which way this letter was delivered. (Id. at 26-27.)

Plaintiffs argue that there was no need to deliver the letters to the City Manager or the Director of Planning because they had no role in the vote. Further, the envelopes were not marked confidential, were not sealed, and could have been opened by anyone and then re-clasped. The envelopes containing the letters were also given to an unnamed clerk for delivery to the Council Members' mail boxes, to a mail slot, and to either a receptionist or a secretary.

The privilege may be waived if a disclosing party did not take reasonable steps to insure and maintain the confidentiality of the information. See In re Grand Jury Proceedings, 727 F.2d 1352, 1356 (4th Cir. 1984). The attorney-client privilege is not favored in the federal courts, and this Court must view the steps taken by the City to maintain the confidentiality of the letter in light of this fact. See Herbert v. Lando, 441 U.S. 153, 175 (1979). In looking at how the letter was delivered, the Court concludes that the City did not take reasonable steps to insure the confidentiality of the letter.

From the outside, this letter looked like and was handled like any other mail that would be delivered, privileged or not. While the document itself was marked for privilege, a person would not know this unless he or she first opened the envelope, which was sealed with a re-usable clasp, and read the document. The envelope was not marked confidential or privileged. (Stublen Depo. at 25.) The envelope was not even sealed using tape or glue. (Id. at 12-13.) Any person could have opened the envelope, discovered its contents, and re-clasped the envelope without notice.

The procedures for handling documents need only be reasonable. See In re Grand Jury

Proceedings, 727 F.2d at 1356. Although requiring encoded documents or secret drop boxes would certainly strain the bounds of reasonableness, it is safe to say that moistening an envelope's flap and writing "confidential" on its exterior are reasonable steps that should have been taken to deter illicit observation and warn the receiver and intermediate handlers of the presence of sensitive information.

The method of delivery, that is, leaving the envelopes in what have been variously described as cabinets, drawers, or mail slots after delivery to the clerk was a reasonable method of maintaining privilege. It would have been a different question if, for example, the letters were left in open baskets or inboxes, where the general public, the cleaning staff, or other persons may have had access to them. See In re Victor, 422 F. Supp. 475 (S.D.N.Y. 1976) (holding that papers left in a public hallway not entitled to privilege). The alleged faxing of the letter to Council Member Randall, however, does take away from the City's position. Where fax and email communications are certainly entitled to privilege, see State of Virginia ex rel. U.S. Fidelity and Guaranty Co. v. Canady, 460 S.E.2d 677 (W.Va. 1997), the fact that Randall's husband and child had access to her fax machine shows that third parties could potentially intercept such communications when they are not sent to a properly monitored machine. Because there is conflicting evidence over whether this letter was faxed, however, and in light of the other factors discussed above, the Court need not make a finding on this issue to hold that the privilege does not apply to the letter.

Finally, as a general matter, the City does not provide a training program or any guidelines on the protection of confidential information and privilege. (Oksman Depo. at 27.) Where the City Attorney did state that his office shreds documents, (id. at 34), it is unclear if the recipients of the letter followed suit. Some of the Council Members stated that they "likely"

shredded the document, (see, e.g., Smith Aff. ¶ 4, Moody Aff. ¶ 3), but it is unclear if this is expected of privileged documents. Without a written policy on the handling of materials marked confidential or training on the requirements of confidentiality, the resulting patchwork of disposal and storage habits by the Council Members tends to take away from the City's assertion of privilege.

### 2. Failure to Object to Disclosure

Closely related to the plaintiffs argument that the City afforded the letter inadequate protections and so demonstrated a lack of confidentiality, is their argument that the Council Members' and the City Attorney's failure to object to Council Member Whitehurst's discussion of the letter during a public meeting of the City Council. Every Council Member's failure to make any objection to Whitehurst's comments evinces an intent that this letter was not to be protected. See Drimmer v. Appleton, 628 F. Supp. 1249, 1251 (S.D.N.Y. 1986) (holding that privilege was waived because the client sat silently in a courtroom while the attorney testified to the contents of the confidential information); Hawkins, 148 F.3d 379, 384 (4th Cir. 1998) ("Although the question asked during the deposition . . . was objectionable on its face on the grounds of attorney-client privilege, neither Stables nor her attorney asserted an objection."); United States v. Suarez, 820 F.2d 1158, 1160-61 (11th Cir. 1987) (permitted attorney to testify at a hearing on a motion to withdraw a guilty plea operated as a waiver of the defendant's privilege during a trial on the merits).

Whitehurst sent an email to the rest of the Council detailing remarks he was going to make about the plaintiffs' Use Permit Application at a City Council meeting the following day. (Whitehurst Email, Pl's Mot. to Compel, Ex. B.) This email was also sent to City Attorney Oksman, City Manager Oliver and to L. Pettis Patton, the Deputy City Manager. (Id.) The email

was dated June 13, 2005 at 6:18 a.m. (Id.) The City Council meeting at which Whitehurst read his comments took place the next day, on June 14, 2005. Whitehurst discussed the letter and quoted directly from two footnotes in it. (Id.) Whitehurst also stated, more generally, that "the attorney's letter of June 9th does not prove a denial of the application would be in violation of any law but rather is vague and does not lend support to a practice the City Council has relied upon by respected and responsible leadership of appointed members of the Planning Commission over a number of years." (Id.) When questioned about these remarks during his deposition, Whitehurst was directed not to answer on the grounds of attorney-client privilege. (Whitehurst Depo. at 14-16.)

While the parties have frequently addressed the waiver aspect of this disclosure, and, specifically, whether Whitehurst's actions can serve to waive the privilege for the entire City, the Court is bothered by another aspect of this event—not one person objected to Whitehurst's comments. Whitehurst informed the other Council Members and the City Attorney as well as some persons who were not among the original recipients of the letter that he was going to reveal some of the contents of the letter more than twenty-four hours in advance. In the email, Whitehurst included passages from the letter, indicated what he was going to say at the meeting, and disputed the conclusions made by the City Attorney in the letter. At the public meeting, Whitehurst read statements from the letter and not one Council Member nor the City Attorney attempted to stop him, cut him off, or otherwise note that the information was supposed to be privileged and confidential. "[I]f a client wishes to preserve the privilege . . ., he must take some affirmative action to preserve confidentiality . . . . Taking or failing to take precautions may be considered as bearing on intent." FDIC v. Marine Midland Realty Credit Corp., 138 F.R.D. 479, 482 (E.D. Va. 1991). Despite the City's arguments that Whitehurst cannot alone waive the

privilege for the City, the Council Members and the City Attorney should have acted to at least try and prevent the disclosure of the contents of the letter. Whether Whitehurst quoted from only two footnotes or not, the failure to object to his statements either before or at the meeting is highly prejudicial to the City's position on the existence of privilege. See id. An objection would have been a reasonable step to ensure confidentiality. Absent any such attempt, the Court cannot allow the defendants to shield this letter under the doctrine of attorney-client privilege.

### IV.   WORK PRODUCT DOCTRINE

While the defendants cannot invoke the attorney-client privilege, they are entitled to the protections afforded by the work-product doctrine embodied in Rule 26(c)(3). See Fed. R. Civ. Pro. 26(b)(3). The work-product doctrine applies to materials made "in anticipation of litigation." Id. Work-product comes in two forms: that which involves an attorney's mental impressions, opinions, legal theories, or conclusions, and that which does not. The former are absolutely protected from discovery. See Hickman v. Taylor, 329 U.S. 495, 510-13 (1947); In re Allen, 106 F.3d 582, 607 (4th Cir. 1997). The latter, however, can be discovered if the requesting party shows substantial need for the information and that they cannot acquire equivalent materials without undue hardship. See Rule 26(b)(3).

The letter is protected as work-product. The City Attorney stated that "it was my judgment that this use permit had the potential for a lawsuit and so I felt that I needed to advise the city council about the legal aspects of this application for a use permit." (Oksman Depo. at 9). As the letter was prepared in anticipation of litigation, it is protected.

Unlike the attorney-client privilege, disclosure of work product does not automatically waive the doctrine's protections. See United States v. Am. Tel. & Tel. Co., 642 F.2d 1285 (D.C. Cir. 1980). Limited disclosure to third parties is insufficient to waive the work product privilege.

See <u>Duplan Corp. v. Deering Miliken, Inc.</u>, 540 F.2d 1215, 1223 (4th Cir. 1976). In order waive work product protection, the party must produce complete documents, <u>see id.</u> at 1299, or attempt to make testimonial use of the work product, <u>See</u> <u>United States v. Nobles</u>, 422 U.S. 225 (1975). Therefore, even though Whitehurst revealed some parts of the letter at the City Council meeting, these revelations are not enough to waive work product protection under Rule 26(b)(3).

## V.  CONCLUSION

The June 9, 2005 Letter from the City Attorney to the City Council is not protected by attorney-client privilege because of the way it was handled and because, despite being warned that some of its contents would be disclosed more than a day in advance, no one objected to the disclosure of some of its contents at the public meeting of the City Council.

The letter, however, is work product. As such it is subject to the provisions of Rule 26(b)(3). To the extent that it is opinion work product, it is absolutely immune from discovery. If the plaintiffs can demonstrate a substantial need for the non-opinion work product and an inability to get equivalent information without undue hardship, they may be entitled to discover those portions of the letter pursuant to Rule 26(b)(3). As this showing is not the subject of the present motions, the Court does not pass on whether the plaintiffs can meet this burden.

Because the letter constitutes work product, the plaintiffs' Motion to Compel is hereby **DENIED**.

Copies of this order shall be forwarded to all counsel of record and to the United States Attorney handling this matter.

**IT IS SO ORDERED.**

                                                        /s/
                              UNITED STATES DISTRICT JUDGE

Norfolk, Virginia

April 20, 2006